Sarah Jane PONTON, Appellant,

v.

D.E. MUNRO and C.A. Munro, Appellee.

No. 13–90–507–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 24, 1991.

F. Edward Barker, Barker & King, Corpus Christi, for appellant.

Gary Norton, Gary, Thomasson, Hall & Marks, Corpus Christi, Patrick L. Beam, Burkett and Associates, Inc., Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN and BISSETT [1], JJ.

## OPINION

NYE, Chief Justice.

Appellees, D.E. Munro and C.A. Munro, sued appellant, Sarah Jane Ponton, over two real estate contracts for the sale of a home. The case was submitted on negligence, breach of contract, breach of fiduciary duty, and wrongful foreclosure. The jury answered special questions favorable to the Munros and awarded $30,000.00 in actual damages and $30,000.00 in punitive damages. Ms. Ponton brings four points of error. The trial court entered judgment for $60,000.00. We affirm.

Sarah Jane Ponton, a real estate sales person, owned a home in Rockport, Texas.

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

She sold the home on a contract for sale to Douglas and Carol Munro for $71,000.00 on September 18, 1980. Later, the Munros told Ms. Ponton that they needed to borrow $25,000.00. Ms. Ponton loaned them the money and added this amount to the $71,000.00 sales price. The parties entered into a new contract for the sale of the same home on July 1, 1981. This contract showed the home's sales price as $96,000.00 ($71,000.00 + $25,000.00).

In March of 1982, the Munros decided to sell the home. They listed it with Ms. Ponton for sale. Attorney Kipling F. Layton offered $90,000.00 cash for the home. The Munros accepted his offer. The Munros then executed a contract with attorney Layton. The Munros tried to close the real estate transaction on the home, but learned that they could not because Live Oak Bank had filed a garnishment suit against the sale proceeds, which "clouded" the title. This garnishment suit concerned a personal loan that Mr. Munro had with the bank. According to Mr. Munro, Ms. Ponton told the Munros that they had thirty days to clear any title defects. The Munros decided to pay off the bank. They had Ms. Ponton type up the closing instructions. Ms. Ponton was also going to handle the closing. Mr. Munro moved to Fort Worth. Later, he received a letter from Ms. Ponton which stated, in relevant part:

> YOU ARE LATE IN MAKING YOUR PAYMENT UNDER THE CONTRACT TO BUY YOUR HOME. YOU ARE ALSO IN DEFAULT OF THE TERMS OF YOUR CONTRACT BY NOT PAYING THE 1981 REAL PROPERTY TAXES WHICH ARE NOW UNPAID AND DELINQUENT. FURTHERMORE, YOU HAVE CAUSED THE INSURANCE POLICY COVERING YOUR HOME TO BECOME INEFFECTIVE DUE TO YOUR VACATING OF THE PREMISES. UNLESS YOU MAKE THE PAYMENT BY JULY 7, 1982, THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR HOME AND TO KEEP ALL PAYMENTS YOU HAVE MADE TODATE [sic]. SUCH PAYMENTS WILL BE CONSIDERED AS LIQUIDATED DAMAGES PER THE CONTRACT.

Mr. Munro testified that after receiving this letter, he spoke to Ms. Ponton about the letter. She told him that she was not going to foreclose. He went to legal aid in Corpus Christi, and an attorney with that office contacted Ms. Ponton. Ms. Ponton again told Mr. Munro that she had no intention of foreclosing. However, the very next day, July 8, 1982, she foreclosed on the home. After the foreclosure, she then sold the home to attorney Layton. The Munros then brought this suit against Ms. Ponton.

This case was tried before a jury and submitted on special questions. Special Question No. 10 asked whether Ms. Ponton breached her fiduciary relationship with the Munros regarding the sale of their home to attorney Layton. Special Question No. 11 asked whether the breach was a proximate cause of the Munros' damages. The jury answered "Yes" to both of these special questions.

By point one, Ms. Ponton challenges the factual and legal sufficiency of the evidence to support the trial court's submission of Special Questions 10 and 11. By point two, she complains that the trial court erred in granting judgment because there was no evidence or insufficient evidence to show that she breached any fiduciary relationship.

After the jury returned its verdict, the Munros filed a "MOTION FOR ENTRY OF JUDGMENT." At the hearing on this motion, the Munros' counsel informed the trial court that they were electing to proceed on the jury's negligence findings and have a judgment entered only on those findings. The Munros' counsel asked the trial court to enter judgment against Ms. Ponton in the amount of $30,000.00 in actual damages and $30,000.00 in punitive damages. Ms. Ponton's counsel responded, "I will take his [Munros' counsel] comment that he is going to elect to go only on the negligence actions and, therefore, any breach of claimed fiduciary relationship is not before us today." The trial court granted the Motion for Judgment against Ms. Ponton only on the negligence causes of action for the Munros as well as $30,000.00 in actual

damages and $30,000.00 in punitive damages.

When a party tries a case on alternative theories of recovery, and the jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory providing the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988); *Brown Services, Inc. v. Fairbrother,* 776 S.W.2d 772, 776 (Tex.App.—Corpus Christi 1989, writ denied). Here, the Munros elected to take a judgment only on their negligence causes of action, and the trial court entered judgment accordingly. Ms. Ponton does not challenge the jury's findings on the negligence causes of action; rather, she challenges the jury's findings on breach of fiduciary relationship, and she attacks the trial court's entry of judgment on those findings. Because the trial court did not enter judgment based upon breach of fiduciary relationship, Ms. Ponton's complaints do not support grounds for reversal of the judgment. No further discussion is needed on these points of error.

By point three, Ms. Ponton challenges the factual sufficiency of the evidence to support the jury's $30,000.00 award of actual damages. In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

The Munros entered into an earnest money contract with attorney Layton, agreeing to sell their home to him for $90,-000.00. The settlement statement showed that the Munros owed Ms. Ponton a balance from the $96,000.00 purchase price of only $55,005.32. This balance included the $25,000.00 loan from Ms. Ponton to the Munros. Mr. Munro testified that he and Ms. Munro would have made about $35,-000.00 from this sale ($90,000.00 − $55,-005.32 = $34,994.68). The Munros elected to use the proceeds from the sale of their home to pay various community debts, including their real estate commission to Ms. Ponton. These debts did not include the debt to Live Oak Bank. These debts were listed on the settlement statement with instructions to pay them out of the proceeds of the sale. Ms. Ponton argues that if the Munros would have used the proceeds to pay all of these debts, including the debt to Live Oak Bank, they would have netted only about $2,388.28 from the sale. Therefore, that would have been the only profit that they would have realized from the sale. The fact that the Munros elected to pay their personal debts out of the proceeds does not negate the fact that they would have made $34,994.68 from the sale if they would have been able to sell their home to attorney Layton. Viewing the evidence in the light most favorable to the jury's verdict, we hold that the evidence is sufficient to support the jury's award of $30,000.00 in actual damages.

By point four, Ms. Ponton challenges the factual and legal sufficiency of the evidence to support the jury's answers to Special Questions 16 and 17. Question 16 asked, "Was such action by Sarah Jane Ponton heedless and reckless disregard of the rights of others affected by it?" The jury answered "Yes." Question 17 asked how much money should be assessed against Ms. Ponton as punitive damages. The jury awarded $30,000.00.

The jury could have based their answer to Questions 16 and 17 on either of two premises because the charge indicated that the jury could answer these questions only if they had answered Special Questions 1 *or* 3 "Yes." Question 1 asked whether Ms. Ponton acted negligently in connection with the attempted closing of the Munro–Layton contract. Question 3 asked whether Ms. Ponton acted negligently when she foreclosed on the Munros' interest in the home. The jury answered "Yes" to both questions. The jury also found that Ms. Ponton's negligence in both instances was a proximate cause of the Munros' damages. Ms. Ponton, in her ap-

pellate brief, did not assign argument whether her actions in connection with the *attempted closing* of the Munro–Layton contract were a heedless and reckless disregard of the rights of those affected by it. She only addressed the *foreclosure* issue. Even if no evidence existed to show that Ms. Ponton's foreclosure of the Munros' interest in the home was heedless and reckless, this would not be a basis to reverse the trial court's judgment. The jury's finding that Ms. Ponton was negligent regarding the attempted closing of the Munro–Layton contract supported their answers to Questions 16 and 17. On appeal, it is presumed that sufficient evidence was introduced at trial to support the findings and judgment of the trial court. *Yoast v. Yoast,* 649 S.W.2d 289, 292 (Tex.1983).

■ Prior to the submission of this case, the Munros filed with this court a "MOTION FOR SUPPLEMENTATION OF THE RECORD," requesting us to file the statement of facts transcribed at the hearing on their Motion for Entry of Judgment. We have received this statement of facts and have ordered the Motion for Supplementation to be carried with this case. The supplementation of the record will not unreasonably delay the disposition of this appeal. Therefore, we order the statement of facts to be filed. *See* Tex.R.App.P. 55(b).

The trial court's judgment is AFFIRMED.