**CITY OF GLENN HEIGHTS, Texas, Appellant,**

v.

**SHEFFIELD DEVELOPMENT COMPANY, INC., Appellee.**

No. 05–00–01238–CV.

Court of Appeals of Texas, Dallas.

Aug. 9, 2001.

**160**

Robert F. Brown, Brown & Hofmeister, L.L.P., Dallas, for appellant.

Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, for appellee.

Before Justices JAMES, MOSELEY, and ROACH.[1]

1. The Honorable John Roach, Retired, Court of Appeals, Fifth District of Texas at Dallas was a member of the panel and participated in the submission of this case. Due to his retirement from the Court on June 30, 2001, J. Roach did not participate in the issuance of this opinion.

## OPINION

Opinion By Justice MOSELEY.

Sheffield Development Company, Inc. ("Sheffield") sued the City of Glenn Heights ("the City") seeking a writ of mandamus, injunctive relief, and a declaratory judgment that chapter 245 of the Texas Local Government Code requires the City to accept Sheffield's plat application, even though the application did not comply with the zoning in effect at the time it was submitted. The trial court granted Sheffield's motion for summary judgment. In its sole issue on appeal, the City argues the trial court erred in granting Sheffield's motion for summary judgment. In support of this issue, the City argues (1) chapter 245 of the Texas Local Government Code does not apply to the rezoning of the subject property; (2) the claims presented by Sheffield in this case are precluded by res judicata; and (3) Sheffield's final judgment in a previous lawsuit constitutes an election of remedies. For the reasons set forth below, we reverse the trial court's judgment and remand this cause for further proceedings.

## BACKGROUND[2]

### A. Introduction

In December 1996, Sheffield purchased an approximately 194–acre tract located in the City ("the subject property"). The subject property is located within a larger tract of land known as planned development district 10 ("PD 10"), which was established by the City on October 20, 1986 through the adoption of ordinance 391–86 ("the old ordinance"). The old ordinance

2. The parties do not dispute the underlying facts of this case, and the following recitation of facts is taken largely from the stipulation of facts the parties presented to the trial court.

zoned PD 10 for single family residential uses. The ordinance "adopted" an attached Concept Site Plan, House Size Concept Plan, and Lot Concept Plan, envisioning the development of primarily 6,500–square–foot lots, but with some 7,500– and 9,000–square–foot lots. However, the old ordinance required that a Detailed Site Plan be filed and approved before the issuance of any plats or permits for the development of the subject property. On April 27, 1998, the City adopted ordinance 641–98 ("the new ordinance"), which rezoned the subject property SF–2 and required minimum 12,000–square–foot lots.

### B. *Sheffield I*

On September 30, 1997, Sheffield sued the City in Ellis County, Texas ("*Sheffield I*").[3] Sheffield alleged the City's development moratorium and "downzoning" of the subject property by passing the new ordinance (which required larger lots) constituted a taking of Sheffield's property without compensation in violation of the Texas Constitution, denied Sheffield due process and equal protection under the Texas Constitution, and violated various common-law rights.

The trial court bifurcated the trial of *Sheffield I* into a liability phase and a damage phase. The liability phase was tried to the court in December 1998. At the close of Sheffield's case-in-chief in the liability phase, the trial court granted the City's motion for directed verdict on all of Sheffield's claims except its inverse condemnation claim based upon the taking of property without compensation. After the conclusion of the bench trial on the liability phase, the trial court ruled the City's rezoning of the subject property constituted a taking under the "investment-backed ex-

pectations" theory of regulatory takings discussed in *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). The trial court subsequently set a jury trial on the damage phase of *Sheffield I* for July 6, 1999.

On May 11, 1999, after the liability phase but before the damage phase of *Sheffield I*, HB 1704 became effective, codified as chapter 245 of the Texas Local Government Code. Chapter 245 provides that an application for a permit must be considered in light of the zoning that was in effect at the time the application was filed. *See* TEX. LOC. GOV'T CODE ANN. § 245.002(a), (b) (Vernon Supp.2001). If a series of permits is required for a project, the zoning that will govern all permits necessary for the project is the zoning in effect at the time the application for the first permit in the series is filed. *Id.*[4]

Three days after HB 1704 became effective, Sheffield's attorney sent a letter to the City contending that "it is clear that HB 1704 allows [Sheffield] to develop under the old PD 10." On May 24, 1999, the City's attorney responded with a letter stating the election of remedies doctrine would preclude Sheffield from obtaining a judgment for permanent damages on its inverse condemnation claim (which was based on the passage of the new ordinance), and then asserting it has the right (under newly-passed chapter 245) to develop the subject property pursuant to the old ordinance. The City further suggested that if Sheffield intended to assert such a right, it should do so in *Sheffield I* before going forward on the damages phase for the permanent taking. On June 3, 1999,

---

3. *Sheffield I* was styled *Sheffield Development Company, Inc. v. City of Glenn Heights*, Cause No. 56414, in the 40th Judicial District Court of Ellis County, Texas.

4. A similar statute, which was codified as chapter 481 of the Texas Government Code, was inadvertently repealed by the legislature on September 1, 1997.

Sheffield filed its fifth amended petition in *Sheffield I;* however, the only additional language added a claim for temporary damages (in addition to its permanent damages claim) should the City reinstate the original zoning applicable to PD 10.

The damages phase of *Sheffield I* was tried before a jury in July 1999. The jury found the City's taking of the subject property by passing the new ordinance resulted in permanent damages in the amount of $485,000. On August 4, 1999, the trial court entered an amended final judgment and filed findings of fact and conclusions of law reflecting the liability and damages findings by the court and jury, respectively. Both parties appealed the final judgment in *Sheffield I;* that case is currently pending in the Tenth District Court of Appeals at Waco.

On November 7, 1999, Sheffield submitted an application entitled "Preliminary Plat/Development Plat/Detailed Site Plan," for development of the subject property with the smaller sized lots allowed by the old ordinance. On December 6, 1999, the City rejected Sheffield's application because it did not comply with the minimum 12,000–square–foot lot zoning applicable under the new ordinance.

### C. The Instant Suit

On November 24, 1999, Sheffield filed the instant lawsuit in Dallas County requesting a writ of mandamus, injunctive relief, and a declaratory judgment to the effect that, based on chapter 245 of the Texas Local Government Code, the new ordinance does not apply to its plat application. Sheffield moved for summary judgment, arguing the old ordinance's adoption and attachment of the "Concept Site Plan" rendered the old ordinance a "permit." Accordingly, Sheffield argued, chapter 245 required the City to consider its plat application in light of the old ordinance (which allowed the smaller lot sizes

contemplated by the application) rather than the new ordinance (which requires larger lots). The chapter 245 argument was the sole basis for Sheffield's summary judgment motion.

In response to Sheffield's motion for summary judgment, the City argued the old ordinance's attachment of a "Concept Site Plan" did not render it a "permit," and, therefore, chapter 245 did not apply to Sheffield's plat application. The City further raised the affirmative defenses of res judicata and election of remedies, and argued they precluded Sheffield's ability to recover on a chapter 245 claim after obtaining a judgment for permanent damages on an inverse condemnation claim in *Sheffield I.*

On July 17, 2000, the trial court granted Sheffield's motion for summary judgment, declaring that the City wrongfully denied Sheffield's plat application. The trial court further ordered that, in accordance with chapter 245, the new ordinance shall not be applied to Sheffield's plat application, and the court enjoined the City from doing so. The City appealed.

### STANDARD OF REVIEW

Prior to our discussion of the standard of review applicable to this case or the merits of Sheffield's arguments on appeal, we address the City's request that this Court take judicial notice of various municipal zoning ordinances attached to its brief. Sheffield objected to this request and moved to strike the relevant attachments because they were not presented to the trial court.

■■■ We recognize courts may take judicial notice of certain matters at any time, even on appeal. *See SEI Bus. Sys., Inc. v. Bank One Tex., N.A.,* 803 S.W.2d 838, 840–41 (Tex.App.—Dallas 1991, no writ). As a general rule, however, appel-

late courts do so "only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law (*e.g.,* calculation of prejudgment interest when the court renders judgment)." *Id.* at 841. To go further runs the risk of effectively rendering this Court into one of original, not appellate, jurisdiction. *Id.* The proffered materials do not affect our jurisdiction over this appeal or resolve a matter ancillary to a decision mandated by law.

Moreover, this appeal concerns whether *the trial court* was confronted with an issue of material fact, *based on the record before it,* such as to make its rendition of summary judgment erroneous. Asking this Court to take judicial notice of matters that were not presented to the lower court, either through a sponsoring witness or, as in this case, through a request for the trial court to take judicial notice, does not change the nature or scope of our review. If the City thought the materials in question were relevant to raise an issue of material fact, it should have presented them to the trial court. Because the City did not do so, we will not consider them on appeal.

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986) (per curiam). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclu-sively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 657 (Tex.App.—Dallas 1992, no writ).

■ In this case, the parties do not argue a material question of fact exists that precluded summary judgment. Rather, the issues raised are based upon undisputed facts, and we may determine the questions presented as a matter of law. *McCreight v. City of Cleburne,* 940 S.W.2d 285, 288 (Tex.App.—Waco 1997, writ denied).

■ If a trial court's order explicitly specifies the ground relied on for the summary judgment ruling, the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). Otherwise, the case must be remanded. *Id.* (In the interest of judicial economy, we may consider additional grounds not ruled on that are properly preserved. *See Cincinnati Life v. Cates,* 927 S.W.2d 623, 626 (Tex. 1996)). Additionally, when an appellant does not properly challenge each independent ground asserted for summary judgment as to a claim, the claim will be affirmed. *Smith v. Tilton,* 3 S.W.3d 77, 83 (Tex.App.—Dallas 1999, no pet.).

Here, Sheffield's chapter 245 claim was the sole basis asserted in its motion for summary judgment, and the trial court's order specified that it granted Sheffield's motion on that basis. Further, the City has properly challenged the trial court's summary judgment award on the basis of Sheffield's chapter 245 claim.

## ELECTION OF REMEDIES

■ The City makes several arguments in support of its contention that the

trial court erred in granting summary judgment. One of its arguments is that Sheffield's chapter 245 claim is barred by the affirmative defense of election of remedies. An election of remedies is

the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it.

*Custom Leasing, Inc. v. Tex. Bank & Trust Co.,* 491 S.W.2d 869, 871 (Tex.1973) (citations omitted). The election doctrine may constitute a bar to relief when "(1) one successfully exercises an informed choice (2) between two or more remedies, rights or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 851 (Tex.1980) (citing *Custom Leasing*). The doctrine is meant "to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Fina Supply, Inc. v. Abilene Nat'l Bank,* 726 S.W.2d 537, 541 (Tex. 1987).

The City argues Sheffield's chapter 245 claim is barred by the doctrine of election of remedies because Sheffield had the opportunity to assert it in *Sheffield I* but did not do so. Instead, Sheffield chose to go forward to final judgment on its permanent taking claim in *Sheffield I.* The City contends the final judgment awarding Sheffield damages for a permanent taking based on the application of the new ordinance is inconsistent with Sheffield's assertion in this case that chapter 245 allows it to develop the property without regard to the new ordinance. The City further argues it is manifestly unjust for Sheffield to assert these inconsistent remedies.

In response, Sheffield argues its choice to go forward with the damages phase of *Sheffield I* did not constitute an election, because the cause of action under chapter 245 did not exist when the liability phase of *Sheffield I* was tried to the court. Sheffield claims the City's proposal to postpone proceeding to the damages phase and final judgment in *Sheffield I* in order to present the chapter 245 claim would not have been practical and would have injured Sheffield by virtue of further delay. Sheffield further argues it is entitled to elect the greatest relief available to it, and only if it prevails in this litigation would it have the opportunity to elect between the two remedies. Additionally, Sheffield filed in the district court an affidavit of its counsel stating: "[i]n the event [Sheffield] prevails in this case and Sheffield is allowed to develop lot sizes in accordance with [the old ordinance] zoning, Sheffield will not seek to recover the permanent damages awarded to it in Sheffield I." Thus, Sheffield argues, it will not receive double recovery and no manifest injustice will result.

Sheffield's claim for permanent damages in *Sheffield I* is clearly inconsistent with Sheffield's chapter 245 claim in this case. There, Sheffield obtained a final judgment for permanent damages resulting from the City's taking of Sheffield's property through the passage of the new zoning ordinance. In this case, however, Sheffield claims chapter 245 allows it to develop the subject property with the smaller sized lots that were allowed by the old ordinance, notwithstanding the City's zoning change.

In *Bayou Terrace Investment Corp. v. Lyles,* 881 S.W.2d 810, 816–17 (Tex.App.— Houston [1st Dist.] 1994, no writ), the court held the plaintiffs were awarded inconsistent remedies under a judgment:

First, they were restored to their original position by the return of their residence free of liens, a remedy available only upon rescission of the contract. Second, they were awarded $560,000 in monetary damages for the fraudulent taking of their property, a remedy arising from a breach of the contract.

Thus, the court held that the remedies of monetary damages for loss of property and restoration of full property rights are inconsistent, and a party is not entitled to a judgment awarding both. *See id.* The facts of this case, although different from *Bayou Terrace,* present precisely the same legal issue with respect to inconsistent remedies. Specifically, can Sheffield recover both a judgment for monetary damages against the City resulting from its passage of the new ordinance and a declaratory judgment permanently enjoining the City from enforcing that ordinance against Sheffield's property? We hold, under the facts of this case, that these two remedies are inconsistent.

█ Despite the inconsistency between the two remedies, Sheffield argues that its choice to go forward with the damages phase of *Sheffield I* did not constitute an election because the cause of action under chapter 245 did not exist when the liability phase of *Sheffield I* was tried to the court. Generally, the election doctrine "is only applied when the claimant actually has two valid and available remedies at the time he makes his election." *Plate & Platter, Inc. v. Wolf,* 780 S.W.2d 453, 456 (Tex.App.—Dallas 1989, writ denied). Thus, we must determine whether the chapter 245 remedy must have been available to Sheffield at the time of the bench trial on liability in *Sheffield I* in order for Sheffield's actions in that lawsuit to have constituted an election between inconsistent remedies.

█ We have located no Texas authority directly on point; however, cases on the election of remedies doctrine reflect that an election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy. This is bolstered by the fact that Texas law allows a party to assert inconsistent theories and facts in the alternative. "One may, for example, plead alternative and inconsistent facts without being barred." *Bocanegra,* 605 S.W.2d at 851–52 (citations omitted). It is the act of obtaining judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies. *See id.* at 853. *See also, e.g., B.L. Nelson & Assocs., Inc. v. City of Argyle,* 535 S.W.2d 906, 910 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.) ("The prosecution of a suit to judgment is undoubtedly an election to pursue the remedy sought in that suit.") (citing *Cantu v. Bage,* 467 S.W.2d 680 (Tex.Civ.App.—Beaumont 1971, no writ)); *City of San Antonio v. Terrill,* 501 S.W.2d 394, 399-400 (Tex.Civ. App.—San Antonio 1973, writ ref'd n.r.e.) ("If one having the right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment ... such election constitutes an estoppel thereafter to pursue another inconsistent remedy.")

█ The chapter 245 claim did not exist at the time Sheffield filed *Sheffield I* or at the time of the bench trial on the liability phase in *Sheffield I.* However, chapter 245 was enacted and became effective while *Sheffield I* was still pending and before the trial court heard the damages phase or entered a final judgment in the case. Further, it is clear from the correspondence in the record that Sheffield was aware: (1) of the existence of chapter 245; (2) that it could potentially prevail on the remedy afforded by chapter 245; and (3) that the City intended to assert election of remedies as a defense if Sheffield went

forward to final judgment in *Sheffield I* on the permanent taking claim. Sheffield's decision to proceed to final judgment in *Sheffield I* for permanent damages based upon the City's taking of Sheffield's zoning rights, with full knowledge of another potential remedy available to it inconsistent with recovering its damages for a permanent taking, precludes its ability to now assert that inconsistent remedy.

Sheffield argues it would have been impractical to present its chapter 245 claim to the court before proceeding to the damages phase and, ultimately, to final judgment. However, we are not persuaded. Although the liability phase of *Sheffield I* had already been tried to the court and ruled upon from the bench, no judgment had been entered. Additionally, despite the fact that Sheffield amended its pleadings in June of 1999 to add a claim for temporary damages in the event that the original zoning was reinstated, it made no attempt to present the chapter 245 issue to the court in *Sheffield I*. Sheffield apparently believed it more "practical" to institute an entirely separate lawsuit, based upon the same facts, in a different county and court, than to present the chapter 245 claim to the judge in *Sheffield I* who was already well versed in the transactions underlying this case. Sheffield further argues that it would have been harmed by a delay in proceeding to the damages phase and judgment in *Sheffield I* because the court had tolled the accrual of prejudgment interest. Again, we are not persuaded. Whether or not prejudgment interest is accruing has no impact on the application of the election of remedies doctrine. In any event, Sheffield is only speculating that the court would have maintained its position on the accrual of prejudgment interest had the chapter 245 issue been presented in *Sheffield I*.

Sheffield further asserts that presenting its chapter 245 claim in *Sheffield I* would have risked an advisory opinion because a plat application based on the old ordinance had not yet been denied. Again, we disagree. It is clear from the correspondence in the record that a controversy existed over which ordinance should apply to the development of the subject property, and there is no indication chapter 245 requires a plat application formally be denied before a court can determine the parties' zoning rights. *See* TEX. LOC. GOV'T CODE ANN. §§ 245.001–.006. Chapter 245 clearly provides that declaratory relief is available in circumstances such as these. TEX. LOC. GOV'T CODE ANN. § 245.006.

Sheffield also argues it is entitled to elect the greatest relief available to it, and only if it prevails in this litigation would it have the opportunity to elect between the remedy granted by the trial court in this case and the remedy it obtained in *Sheffield I*. We do not agree with Sheffield's argument that it is entitled to pursue both remedies to judgment, and then elect which it would like to enforce. The only case Sheffield cites in support of this argument is *Ponton v. Munro*, 818 S.W.2d 865 (Tex.App.—Corpus Christi 1991, no writ). In *Ponton*, the plaintiff submitted theories of negligence and breach of fiduciary duty to the jury, and the jury returned findings favorable to the plaintiff on both. *Id.* at 866–67. However, the plaintiff requested that judgment be entered only on the negligence findings. *Id.* *Ponton* illustrates that a plaintiff may submit inconsistent theories to a jury, and if the jury returns favorable findings on both, the plaintiff may then choose the theory upon which he or she would like to have judgment entered: "When a party tries a case on alternative theories of recovery, and the jury returns favorable findings on two or more theories, the party

has a right to a judgment on the theory providing the greatest or most favorable relief." *Id.* at 867. Contrary to Sheffield's assertion, *Ponton* does not stand for the proposition that a plaintiff may obtain two judgments on alternative or inconsistent theories, and then pick which judgment to enforce.

■■■ One of the elements required to establish an election of remedies defense is that manifest injustice would result otherwise. *Bocanegra*, 605 S.W.2d at 851. Pursuant to *Bocanegra*, when an inconsistent right, remedy, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust, the election doctrine will bar recovery. *Id.* Sheffield argues that, because it has stipulated it will not seek the permanent damages awarded in *Sheffield I* if it prevails on its chapter 245 claim in this suit, it will not receive double recovery and no manifest injustice will result if Sheffield is allowed to pursue this action. In support of this argument, Sheffield relies on various cases to suggest the election of remedies doctrine is extremely limited and should not apply in this case: *Fina Supply*, 726 S.W.2d at 541 (stating that the election doctrine is not favored, and its scope should not be extended); *Bocanegra*, 605 S.W.2d at 851 (stating that an election will bar recovery when the inconsistent right, remedy, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust); *B & L Cherry Hill Assocs., Ltd. v. Fedders Corp.*, 696 S.W.2d 667, 670 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (holding that a suit by an apartment owner against a general contractor did not bar a subsequent suit against a subcontractor where facts did not show manifest injustice would

result); *Green Oaks, Ltd. v. Cannan*, 749 S.W.2d 128, 131 (Tex.App.—San Antonio 1987, writ denied) (stating that the sole purpose of the election doctrine is to prevent double recovery).

■■■ Sheffield accurately recounts the holdings and general principles from the cases cited in support of this argument; however, none of these cases involved a knowing election between inconsistent remedies, as this case does. *Fina Supply*, 726 S.W.2d at 541 (initial remedy sought did not exist, so election doctrine did not bar second suit); *Bocanegra*, 605 S.W.2d at 849 (plaintiff did not make an informed election between remedies); *B & L Cherry Hill Assocs.*, 696 S.W.2d at 670 (remedies sought were "not repugnant or inconsistent"); *Green Oaks*, 749 S.W.2d at 131 ("no inconsistency" between two remedies sought). Additionally, Sheffield has cited no case, nor have we found one, that stands for the proposition a party may avoid the application of the election of remedies doctrine simply by declining to enforce one of two judgments awarding inconsistent remedies. As previously discussed, the case law reflects that the act of pursuing a claim to final judgment with knowledge of inconsistent remedies constitutes an election. A party's stipulation that it will not collect or enforce both judgments has no impact on the application of the election of remedies doctrine. Further, we hold that pursuing and obtaining two separate judgments on clearly inconsistent remedies from two separate courts is so contrary to fair dealing and to judicial economy as to constitute manifest injustice within the meaning of *Bocanegra*, and is, therefore, sufficient to trigger the election of remedies doctrine.

■■■ We do not imply that a final judgment is always *necessary* for the election of remedies doctrine to apply. *Bocanegra*, 605 S.W.2d at 853 ("An election

may arise short of one's prosecution of a claim to final judgment."). However, we hold that an election occurs when a party chooses to go forward to final judgment on one theory to the exclusion of other inconsistent theories of which it has knowledge. In this case, Sheffield elected to obtain a judgment for permanent damages based on its taking claim, which resulted from the passage of the new ordinance. Because that remedy is inconsistent with obtaining declaratory and injunctive relief from the application of that ordinance, Sheffield's claims in this case are barred by the election of remedies doctrine.

## CONCLUSION

The undisputed summary judgment evidence raises a fact issue as to each element of the City's affirmative defense of election of remedies. Accordingly, the trial court erred in granting summary judgment on Sheffield's chapter 245 claim. We sustain the City's sole issue. In light of our disposition, we need not address the other arguments raised in this appeal. We reverse the trial court's judgment, and remand this case for further proceedings.[5]

---

5. The City did not file a cross-motion for summary judgment.