TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00312-CV







Save Our Springs Alliance and The Circle C Neighborhood Association, Appellants



v.



The City of Austin; Circle C Land Corporation; and Stratus Properties, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN202018, HONORABLE PAUL DAVIS, JUDGE PRESIDING





O P I N I O N




 The Save Our Springs Alliance, a non-profit, public-interest organization, and the
Circle C Neighborhood Association brought suit in district court in Travis County to prevent
development in the Barton Springs Zone in Austin, alleging that the City of Austin was granting
development permits in violation of a city ordinance. The City of Austin, the Circle C Land
Corporation, and Stratus Properties filed a plea to the jurisdiction, which the district court granted. 
The Save Our Springs Alliance and the Circle C Neighborhood Association then brought this appeal,
narrowly focusing on the proper application of the doctrines of mootness and ripeness and seeking,
in the alternative, an opportunity to amend its petition. For the reasons stated below, we affirm the
judgment of the district court.


BACKGROUND


 The issues in this case come to us from a grant of a plea to the jurisdiction concerning
the applicability of the City of Austin's Save Our Springs Ordinance (the "Ordinance") to various
parcels of real property. The history of the Ordinance and disputes over its application are complex
and lengthy. As well, the ordinance and statutes at issue in this case were amended at different
points in the course of litigation, and the pleadings were amended twice. Thus, we begin with a
comprehensive introduction to the parties and a review of the events that led to this appeal to provide
the context from which these issues arose.

 Circle C Land Corporation, a subsidiary of Stratus Properties, Inc. ("Stratus"), owns
approximately 1200 acres of land divided into seventeen parcels within the geographic area
containing watersheds that contribute to Barton Springs--Barton Creek, Barton Springs, and the
Barton Springs Edwards Aquifer ("Barton Springs watershed"). These parcels are part of a master-planned, mixed-use development known as "Circle C Ranch." Development of Circle C Ranch
began in the early 1980s as a unified development project. The master plan included a land-use plan,
a utility plan for the provision of water, wastewater, drainage and other utilities, a roadway and
transportation plan, and a plan for schools, parks, and amenities.

 In the early 1990s, a group of Austin citizens, frustrated by their perception that the
Austin City Council was failing to adequately safeguard Barton Springs and the Barton Springs
watershed, initiated the Ordinance and placed it on the Austin municipal ballot for a local
referendum election. See Quick v. City of Austin, 7 S.W.3d 109, 112 (Tex. 1998). After
overwhelming approval of the Ordinance by Austin voters in August 1992, the Austin City Council
enacted the Ordinance and incorporated it into the City Code. Id.

 The "Declaration of Intent" states that the Ordinance seeks to insure water-quality
control in the Barton Creek watershed. Thus, its provisions do not apply city-wide. The Ordinance
contains the following provisions pertinent to this appeal: (1) it limits the percentage of a land tract
devoted to "impervious," i.e., non-porous cover; (2) it requires that new developments be set back
from streams and not contribute to an increase in the amount of pollution constituents commonly
found in urban rainfall runoff water; (3) it prohibits construction in the "critical water quality zone"
of the Barton Springs watershed; and (4) it provides for no waivers or exceptions except in limited
circumstances necessary to avoid conflicting with state and federal laws. The Ordinance provides
that it may only be amended by an affirmative vote of no fewer than six of the seven members of the
Austin City Council.

 In 1999, the legislature considered the problem that arises when a party has applied
for a development permit under one set of land-use regulations when those regulations have changed
after an application has been filed. It declared that in those situations regulatory agencies should
consider development applications based, in part, on the ordinances "in effect at the time the original
application for the permit is filed." Tex. Loc. Gov't Code Ann. § 245.002(a) (West Supp. 2004). 
It also decided that "[p]reliminary plans and related subdivision plats, site plans, and all other
development permits for land covered by the preliminary plans or subdivision plats are considered
collectively to be one series of permits for a project." Id. § 245.002(b). (1) At the same time, the
legislature provided that the grandfather clause "does not apply to regulations to prevent imminent
destruction of property or injury to persons, including regulations effective only within a flood plain
established by a federal flood-control program and enacted to prevent the flooding of buildings
intended for public occupancy." Former section 245.004(9). (2)

 On June 24, 2002, appellants Save Our Springs Alliance (3) and the Circle C
Neighborhood Association (4) filed suit in district court. Basing their pleadings on chapter 245 of the
local government code, they claimed that the City was "approving projects that fail to comply with"
the Ordinance. In particular, they argued that the terms of former section 245.004(9) exempted
Circle C Ranch from the grandfather clause, and so the City ought to apply the regulations found in
the Ordinance to development applications for plats within Circle C Ranch rather than pre-Ordinance
regulations. As a result, they sought mandamus and injunctive relief to bar the City from granting
development permits for property in Circle C Ranch. (5) 

 At that time, Stratus and the City were in the midst of negotiations regarding the
application of the Ordinance to Circle C Ranch in light of unanswered legal questions concerning
the proper application of the grandfather clause and former section 245.004(9) to that land. Those
parties reached a settlement determining development rights to Circle C Ranch and a procedure of
review of development permits and applications (the "development agreement"). On August 1,
2002, the Austin City Council adopted the development agreement and fifteen additional ordinances
as an amendment to the Ordinance, zoning Circle C Ranch by an affirmative vote of six of the seven
council members, to be effective August 12, 2002. 

 On January 13, 2003, the City filed a plea to the jurisdiction, in which it argued that
appellants' claims were moot with respect to Circle C Ranch because the development agreement,
as an amendment to the Ordinance, controlled all development-permit applications for Circle C
Ranch. It also argued appellants' claims regarding the enforceability of the Ordinance were not ripe
because they were not based on the application of the Ordinance to any property or development
permit. On January 21, appellants amended their pleading to argue that owners of property within
the area regulated by the Ordinance, including Stratus, have asserted development rights under the
grandfather clause. Appellants attempted to allege their claims with greater specificity and argued
that the City maintains a permit procedure by which it reviews applications that claim to be
grandfathered from the Ordinance. Finally, they claimed that the City had granted some
development permits, not within Circle C Ranch, in violation of the Ordinance. On March 21, 2003,
appellants further amended their pleadings in another attempt to allege with specificity permits
issued by the City that appellants believed violated the Ordinance. (6)

 In both their first and second amended petitions, appellants sought a declaration that
the development agreement is invalid. They moved to sever that invalidation claim from this suit
on May 1, which the trial court granted on May 7. They then non-suited that separate lawsuit on
August 5, 2003.

 On May 7, the district court granted the City's plea to the jurisdiction on the grounds
of mootness, dismissing appellants' claims relating to Circle C Ranch. Because the ripeness claim
concerned only non-Circle C Ranch property, claims of which only appeared in appellants' first and
second amended pleadings, the court delayed ruling on the ripeness claim. On May 13, in a final
judgment the court granted the City's plea to the jurisdiction on ripeness grounds for property not
in Circle C Ranch. This appeal followed.


DISCUSSION


 In three issues on appeal, appellants argue that the district court erred in granting the
City's plea to the jurisdiction. We will address each argument in turn.

 Subject-matter jurisdiction is essential to the authority of a court to decide a case. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's
authority to determine the subject matter of a specific cause of action. Texas State Employees
Union/CWA Local 6184 v. Texas Workforce Comm'n, 16 S.W.3d 61, 65 (Tex. App.--Austin 2000,
no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if
all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional
defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to
confer jurisdiction on the trial court. See id.

 Because subject-matter jurisdiction presents a question of law, we review the district
court's decision de novo. Id. In reviewing a trial court's ruling on a plea to the jurisdiction, we do
not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look
to the pleader's intent, and accept the pleadings' factual allegations as true. Texas Ass'n of Bus., 852
S.W.2d at 443.


Mootness

 We first consider the district court's ruling that appellants' claims concerning Circle
C Ranch were moot. Appellants argue that, because they challenged the validity of the development
agreement in their first and second amended petitions, their claims against the City are not moot. 
We disagree. 

 Declaratory judgment is appropriate only if a justiciable controversy exists as to the
rights and status of the parties and the controversy will be resolved by the declaration sought.
Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (citing Texas Ass'n of Bus., 852
S.W.2d at 446). To constitute a justiciable controversy, there must exist a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute.
Texas Dep't of Public Safety v. Moore, 985 S.W.2d 149, 153 (Tex. App.--Austin 1998, no pet.). 
The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases
that present a "live" controversy at the time of the decision. Camarena v. Texas Employment
Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (i) one seeks to obtain a
judgment on some controversy, when in reality none exists; or (ii) one seeks a judgment on some
matter that, when rendered for any reason, cannot have any practical legal effect on a then-existing
controversy. Texas Health Care Info. Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 846-47
(Tex. App.--Austin 2002, no pet.). Cases may become moot when allegedly wrongful behavior has
passed and could not be expected to recur. Securities & Exch. Comm'n v. Medical Comm. for
Human Rights, 404 U.S. 403, 406 (1972); see also Reyna v. City of Weslaco, 944 S.W.2d 657, 662
(Tex. App.--Corpus Christi 1997, no writ).

 Chapter 245 of the local government code creates a system by which property
developers can rely on the land-use regulations in effect at the time "the original application for [a]
permit is filed." Tex. Loc. Gov't Code Ann. § 245.002(a). At the same time, because the "laws,
rules, regulations, or ordinances of a regulatory agency" may change and those changes may
"enhance or protect the project," it allows a permit holder to take advantage of those changes without
forfeiting any of its chapter 245 rights. Id. § 245.002(d).

 In this case, appellants originally filed suit in order to prevent the application of the
grandfather clause to Circle C Ranch property because they believed that the legislature had
exempted Circle C Ranch development permits from it. See id. § 245.002(a); former section
245.004(9). In the course of litigation, however, the City amended the Ordinance according to the
terms of the development agreement. This amendment was a legislative act by the City and was
made effective August 12, 2002. By its terms, it reformed the Ordinance with respect to all
development permits requested for Circle C Ranch property. See City of Brookside Village v.
Comeau, 633 S.W.2d 790, 792 (Tex. 1982) (quoting Hunt v. City of San Antonio, 462 S.W.2d 536,
539 (Tex. 1971), for proposition that city ordinance is presumed to be valid and courts have no
authority to interfere with its enforcement unless ordinance is unreasonable and arbitrary). Neither
Stratus nor the City asserts chapter 245 rights concerning property at Circle C Ranch independent
of their rights to rely on the development agreement. See Tex. Loc. Gov't Code Ann. §§ 245.001-.006. In addition, appellants are not complaining on appeal that the development agreement is
invalid. Although they included that claim in the amended petitions, they severed and then nonsuited
that claim. 

 When filing a claim, a party "may set forth two or more statements of a claim or
defense alternatively or hypothetically, either in one count or defense or in separate counts or
defenses." Tex. R. Civ. P. 48. However, because the district court severed appellants' challenge to
the development agreement the same day as it ruled on the plea to the jurisdiction, it did not have
two alternate claims before it. Rather, it could consider only the question of the application of
former section 245.004(9) to the Ordinance. As a result, we also do not have two alternate claims
presented on appeal. Thus, we must assume that the terms of the development agreement apply to
this case.

 In this case, appellants seek to apply the terms of the Ordinance as against the terms
of land-use regulations in effect at the time Stratus originally sought development permits for Circle
C Ranch. However, Stratus and the City are not seeking to apply pre-Ordinance development
regulations to requested permits, a situation that would trigger the statutory requirements and
exceptions of chapter 245. See Tex. Loc. Gov't Code Ann. § 245.002; former section 245.004(9). 
Rather, Stratus and the City want to apply the terms of the development agreement, a later-enacted
ordinance. Because the development agreement amended the Ordinance, Stratus is entitled to rely
on that change to the Ordinance in requesting development permits. Id. § 245.002(d). In fact, the
City adopted the development agreement expressly in order to allow the kinds of permits Stratus is
seeking. Thus, any arguments regarding permits issued for Circle C Ranch property must be
measured against the requirements of the development agreement rather than against the Ordinance
as originally adopted. 

 Because the development agreement is a validly enacted amendment to the
Ordinance, we must find moot any claim in which appellants attempt to apply the original terms of
the Ordinance as modified by former section 245.004(9) rather than the terms of the development
agreement. We overrule appellants' issue regarding the district court's grant of the plea to the
jurisdiction for mootness. (7)


Ripeness

 Having decided that appellants' claims concerning property at Circle C Ranch are
moot, the district court determined that their claims to non-Circle C Ranch property were not ripe
for adjudication. On appeal, appellants argue that (1) the district court's ruling ignores the plain
language of chapter 245 of the local government code; (2) the policies underlying the Uniform
Declaratory Judgments Act (UDJA) overcome the ripeness issues in this suit; (3) the district court's
ruling ignores the language of the pleadings, which appellants assert include the specificity that the
City seeks to require under chapter 245; and (4) the development agreement provides a specific case
of the City giving final approval for development in violation of the Ordinance. In part, appellants
rely on City of Glenn Heights v. Sheffield Development Co., 55 S.W.3d 158, 166 (Tex. App.--Dallas
2001, pet. denied), to assert that chapter 245 does not require that they wait until an actual
application be approved before it can file suit. Appellants also argue that they adequately pleaded
the existence of particular property that may have applications pending before the City or that may
have approved applications. (8) We disagree.

 A case is not ripe when its resolution depends on contingent or hypothetical facts, or
upon events that have not yet come to pass. Patterson v. Planned Parenthood of Houston &
Southeast Tex., Inc., 971 S.W.2d 439, 442 (Tex. 1998). "For a controversy to be justiciable, there
must be a real controversy between the parties that will be actually resolved by the judicial relief
sought." State Bar of Tex. v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994). An action for declaratory
judgment would lie when the fact situation manifests the presence of "ripening seeds of a
controversy." Moore, 985 S.W.2d at 153-54. Such appear where the claims of several parties are
present and indicative of threatened litigation in the immediate future which seems unavoidable,
even though the differences between the parties as to their legal rights have not reached the state of
an actual controversy. Id. at 154. The doctrine has a pragmatic, prudential aspect that is directed
toward "[conserving] judicial time and resources for real and current controversies, rather than
abstract, hypothetical, or remote disputes." Mayhew, 964 S.W.2d at 928. Moreover, avoiding
premature litigation prevents courts from entangling themselves in abstract disagreements, while
allowing other branches of government and governmental agencies to perform their functions
unimpeded. Patterson, 971 S.W.2d at 443. A claimant need not show that the injury has occurred,
provided that the injury is imminent or sufficiently likely. Waco Indep. Sch. Dist. v. Gibson, 22
S.W.3d 849, 852 (Tex. 2000); Patterson, 971 S.W.2d at 442. To determine ripeness, we must
examine both the fitness of the issues for judicial decision and the hardship occasioned by the court's
denying judicial review. Office of Pub. Util. Counsel v. Public Util. Comm'n, 843 S.W.2d 718, 724
(Tex. App.--Austin 1992, writ denied).

 First, we will consider the level of specificity chapter 245 and the UDJA require of
claims. See Tex. Loc. Gov't Code Ann. §§ 245.001-.006; Tex. Civ. Prac. & Rem. Code Ann.
§§ 37.003-.004 (West 1997). The legislature created a system of rights concerning the issuance of
land-use permits in chapter 245 to require each regulatory agency "to consider the approval,
disapproval, or conditional approval" of individual applications for permits based upon the land-use
regulations "in effect at the time the original application for the permit is filed." Tex. Loc. Gov't
Code Ann. § 245.002(a). The statute also describes in detail the manner of determining which
regulations apply when considering "a series of permits." Id. § 245.002(b). Permit holders may take
advantage of changes in local regulations "that enhance or protect the project" without forfeiting
rights created in chapter 245. Id. § 245.003(c). The chapter also includes provisions on the
application of various regulations to dormant projects. Id. § 245.005. Chapter 245 rights and
procedures "may be enforced only through mandamus or declaratory or injunctive relief." Id.
§ 245.006.

 We disagree that "there is no indication chapter 245 requires a plat application
formally be denied before a court can determine the parties' zoning rights." See Sheffield Dev. Co.,
55 S.W.3d at 166. Chapter 245 focuses directly on a party's zoning rights. See id. Because of this
focus, when a party presents the question of the proper application of chapter 245 to a city ordinance,
as appellants do here, it must allege some facts to show that the city has applied its regulations to a
particular case. A regulatory agency ought to have the opportunity to make a final determination as
to which set of land-use regulations apply to a specific plat before a court intervenes. See Tex. Loc.
Gov't Code Ann. §§ 245.002-.005; Patterson, 971 S.W.2d at 443. The individual and particular
nature of this statutory scheme requires that individual permits be issued or denied for a controversy
to be ripe for adjudication. Otherwise, a court would be ruling on a hypothetical application of land-use regulations to plats and interfering with the functions of land-use regulatory agencies before they
would have the opportunity to perform those functions themselves. See Tex. Loc. Gov't Code Ann.
§ 245.002; Patterson, 971 S.W.2d at 443.

 Next, we consider whether appellants pleaded with the specificity required under
chapter 245. To support their argument, appellants point to four paragraphs in the second amended
pleading:


62. Despite [the] mandate of [the Ordinance], the City of Austin, through its
administrative staff and its Zoning and Platting Commission, has repeatedly
approved development permit applications that do not comply with the SOS
Ordinance. For example, the City's "HB 1704 Weekly Update" shows that on
February 4, 2003, the 1704 Committee approved a 1704 request for 16.48 acres
of property in the Barton Spring Zone.[ (9)] The project name is the Village of
Western Oaks, Section 31 Townhomes. A site plan for this project was
previously approved but expired. The expired permit was reviewed under
regulations in effect on May 2, 1984, the filing date of the preliminary
subdivision for the Village at Western Oaks, and City records reveal that the re-issued permit is likewise to be reviewed and approved under pre-SOS
ordinance standards.


63. City records further show that on a regular, and sometimes weekly, basis, the
City staff meets to review development permit requests seeking to develop
under terms of ordinances that preceded the SOS ordinance, and that are not as
protective of property and human health. As a result, in almost every month up
to and including February 2003 at least one, if not several, requests for
development under ordinances that pre-date SOS are approved. The City's HB
1704 Weekly Update shows that from May 1999 to February 2003, the City
staff approved more than 60 requests for application of pre-SOS ordinances to
proposed development in the Barton Springs Zone.


* * * * 


65. The initial decision whether or not to grandfather a permit or amendment,
extension, or renewal thereto is made by the City's "1704 Committee." The
1704 Committee is composed of about six City staff members who review a
developer's "1704 Determination Request." While Defendant City contends
that decisions of the 1704 Committee are not formal City decisions, rarely, if
ever, are these 1704 Committee determinations not followed by City staff
charged with making the final development approval on some classes of
developmental permit approvals that are made administratively, nor are these
determinations challenged or overridden by the City's Zoning and Platting
Commission, which is charged with making final City decisions on some other
development permits. City records show that 1704 approvals often expire
before development happens, and developers re-approach the City for an
extension of the grandfathering decision or to request a new grandfathering
decision. Therefore, the City will continue to face new requests for permits and
amendments, extensions, and renewals of permits that do not comply with the
SOS ordinance because of a claim of grandfathering under Chapter 245. 


66. City records and other information also show[]that thousands of acres of land
for which preliminary plans were filed before the SOS ordinance was approved
have not yet been developed and thus the City will continue to receive
applications for subsequent approvals for site plans, final plats, building
permits, and amendments, revisions and extensions thereto where such
applications seek development authorization under pre-SOS ordinance
standards. Defendant Stratus Properties Inc. holds land in this category totaling
more than 1000 acres at its "Barton Creek" and "Lantana" developments and
has indicated its desire to develop this land under standards that do not comply
with the SOS ordinance. The City of Austin has granted such requests on parts
of this land without enacting a lawful amendment to the SOS ordinance.


 

 What appellants have alleged, then, is that (i) developers have submitted permit
applications; (ii) the City's "1704 Committee" has approved those applications; (iii) the "1704
Committee" does not have final authority to issue permits, but that power is reserved to the City's
Zoning and Platting Commission; and (iv) Stratus owns property in the Barton Creek Zone and has
indicated a desire to develop that property. They did not allege that the City's Zoning and Platting
Commission had issued a permit applying the guidelines of chapter 245 to property in the area
covered by the Ordinance. 

 Given a plain reading of appellants' second amended pleading, in light of the
specificity required for pleading under chapter 245, we hold that appellants have failed to allege a
claim that is ripe for the district court to review. In addition, because a grant of a permit by the City
does not automatically result in immediate development and appellants would have ample
opportunity in such case to challenge the granted permit, they will not suffer any additional hardship
by waiting until a permit is granted. We also found, as discussed above, that the development
agreement was an amendment to the Ordinance, which appellants no longer dispute. Thus, we will
not read the development agreement to be an example of "final approval for development in
violation of the Ordinance." We agree with the district court that appellants' claims were not ripe,
and we overrule appellants' challenge to this finding. Because a finding that a claim is not ripe
results in dismissal without prejudice, the judgment here does not prevent appellants from litigating
the merits of their claims in the future.


Opportunity to Amend Pleadings

 In their final issue, appellants argue that the district court ought to have granted them
the opportunity to amend their pleading to establish jurisdiction. A failure to allege sufficient facts
to demonstrate jurisdiction does not necessarily authorize immediate dismissal. City of Austin v. L.S.
Ranch, Ltd., 970 S.W.2d 750, 753 (Tex. App.--Austin 1998, no pet.). When a plaintiff fails to plead
facts that establish jurisdiction but the petition does not affirmatively demonstrate incurable defects
in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the
opportunity to amend. Tex. Dep't of Parks & Wildlife v. Miranda, 47 Tex. Sup. Ct. J. 386, 390-93,
2004 Tex. LEXIS 304 (April 2, 2004) (citing County of Cameron v. Brown, 80 S.W.3d 549, 555
(Tex. 2002)). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiff an opportunity to amend. Id. 
Additionally, if a party has repleaded in an attempt to cure disputed jurisdictional issues and if a
court can ascertain the nature and issues of the controversy and the evidence that probably would be
relevant, that party is not entitled to an opportunity to replead. See id. at 394 (citing Tex. R. Civ. P.
47).

 In this case, after the City filed its plea to the jurisdiction, appellants amended their
petition twice, first a week after the City filed the plea to the jurisdiction and again two months later. 
The court did not issue its final order until almost two months after they filed their second amended
petition and had refrained from ruling on the merits of the ripeness claim to give appellants time for
discovery. In addition, the court gave them notice of what it was requiring in order for it to deny the
plea, and only after discovery did the court consider the pleadings and arguments and grant the plea. 
Under these facts, their second amended petition provided sufficient notice to the district court to
ascertain the nature and issues of the controversy and the evidence that probably would be relevant. 
See id. Thus, the court had no obligation to grant appellants further opportunities to amend their
pleading. We overrule appellants' final issue.


CONCLUSION


 Because we overrule appellants' issues on appeal, we affirm the judgment of the
district court.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: May 6, 2004
1. We will refer to sections 245.002(a) and 245.002(b) collectively as "the grandfather clause"
because they "grandfather" plats from local land-use regulations enacted after an original application
for development for that plat was filed.
2. Act of April 29, 1999, 76th Leg., R.S., ch. 73, § 2, sec. 245.004(9), 1999 Tex. Gen. Laws
431, 432, amended by Act of May 26, 2003, 78th Leg., R.S., ch. 646, § 1, 2003 Tex. Gen. Laws
2050, 2050 (former section 245.004(9)). As we discuss in our opinion, former section 245.004(9)
existed in this form when the Save Our Springs Alliance filed this suit. It was amended after the
court entered its final judgment granting the City's plea to the jurisdiction.
3. Save Our Springs Alliance (SOS), formerly the Save Our Springs Legal Defense Fund, is
a non-profit, public-interest organization of approximately 2000 members. According to its
pleadings, its mission is "the protection and enjoyment of Barton Springs, the Barton Springs
Edwards Aquifer, the Barton Springs watershed and the Barton Springs Ecosystem." Under its
former name, SOS was formed to organize a petition drive to put the Ordinance on the city ballot.
4. The Circle C Neighborhood Association is an unincorporated voluntary association of
homeowners within Circle C Ranch. Neighborhood Association members are successors-in-interest
to the original Circle C Ranch landowners.
5. They sought a declaration that some unspecified portions of chapter 245 were
unconstitutional, but they do not bring that argument on appeal.
6. We will review the details of appellants' second amended pleading when we consider their
arguments that their claims were ripe.
7. Appellants also urge that the district court was inconsistent by granting the City's plea
regarding mootness while at the same time severing their attack on the validity of the development
agreement. Because the court dismissed appellants' claims without prejudice, and, in any event,
because they have nonsuited that separate claim, we need not consider their arguments.
8. We note that appellants do not present a constitutional challenge to any statute or
regulation. See, e.g., Mayhew v. City of Sunnyvale, 964 S.W.2d 922, 928-38 (Tex. 1998). We will
only review the ripeness of their claim under the rights created under the statute on which they base
their claim. See Continental Cas. Ins. Co. v. Functional Restoration Assoc., 19 S.W.3d 393, 404-05
(Tex. 2000).
9. House Bill 1704, approved by the legislature in 1999, added to the local government code
the statute at issue in this case. See former Tex. Loc. Gov't Code Ann. § 245.004(9). As a result,
the City uses the term "1704 Committee" to refer to the committee it employs to review land-use
applications under that statute.