# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00299-CV

### Andrew T. McGregor and Yellow Rose Communications, Inc., Appellants

### v.

### Oscar Vela, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. 99-12077 HONORABLE PAUL DAVIS, JUDGE PRESIDING

A jury found that Andrew T. McGregor, president and part owner of Yellow Rose Communications, Inc., defamed Oscar Vela. The jury found that McGregor made false, defamatory statements with actual malice in his official capacity with Yellow Rose. The jury found actual damages of $125,000 and punitive damages of $5,000. The district court awarded judgment accordingly, assessing damages against both McGregor and Yellow Rose. Appellants McGregor and Yellow Rose jointly contend that they were wrongly denied a jury instruction and charge on qualified privilege. They also contend that there was no evidence to support the findings of defamation per se, actual malice, and damages. McGregor argues that the finding that he made the statements in his official capacity should absolve him of individual liability. We will affirm the judgment.

**BACKGROUND**

Yellow Rose is a Texas corporation owned by McGregor, his wife, and son. McGregor is the president. Yellow Rose owns two Central Texas radio stations that play Spanish-language music. Oscar Vela is well-known as the dominant promoter of Spanish-language dances and concerts in Austin—particularly those involving bands from Monterrey, Mexico. However, in 1999, McGregor was attempting to challenge Vela's dominance in the promotion of such dances and concerts. Pati Urdiales was a Yellow Rose employee who worked as a salesperson, a disc jockey, and a booking agent, who also wanted to become a promoter in her own right; two months after McGregor fired her in September 1999, she went to work for a rival radio station owned by Jose Garcia. Vela advertises his events on Garcia's radio stations.

McGregor signed a letter dated August 6, 1999 on radio-station letterhead[1] discussing the state of Spanish-language music promotion in Austin. He noted that before his stations arrived,

> Austin was monopolized by one radio station operator and one booking agent. The monopoly seemed to be disliked by the community. Clubs were and are still selling alcohol to underage teens....narcotics still flow freely through the Clubs and Concerts.

> The business of providing Hispanic entertainment to this Central Texas area is under a cloud that is not wholesome and motivated by monopolistic greed.

> Now there is another radio voice playing artists['] records, NOT accepting Payola and helping out of town booking companies have the advertising needed to establish new CLUBS and SHOWS.

> Word is spreading that the 'Mafia-Like' dividing of the Texas cities may be coming to an end. However it still persists.

---

[1] McGregor testified that this was not embossed letterhead paper, but merely paper with the logos on it. We will call it letterhead for simplicity.

Mexico's reputation, true or not, is one of sending Bands here with narcotics on board the buses and into the Clubs. One booking agent still brags that he 'controls' Austin Mexican bookings and no one else can come into this city.

He threatens to pit one band and one venue against another to dilute profits. He has threatened that 'people will get hurt' if they interfere with his monopoly.

The letter goes on to reiterate some of these allegations and then position McGregor's nascent Superior Booking Agency and radio stations as an alternative to the status quo. McGregor testified that, despite his statement that one booking agent had a monopoly on Austin, he did not have a particular booking agent in mind but an amalgam of several agents. Urdiales said she heard McGregor confirm with his lawyer, "So if I say all what he does but don't mention his name, I won't get in trouble?" Urdiales did not specify in her testimony what the subject of McGregor's confirmation was. Garcia, Urdiales's current employer and owner of rival radio stations on which Vela advertises, testified that the letter could only refer to Vela.

McGregor gave the letter to Urdiales to give to her cousin, a music journalist in Monterrey. She testified that she was directed to deliver it to the United States embassy, which she did, and to other people in the music business, which she did not do after her cousin told her about the letter's contents. McGregor testified that he prepared the letter at Urdiales's request that he provide her cousin an overview of the Austin music scene; Urdiales denied McGregor's assertion that she or her cousin requested it.

In other notes McGregor sent following up on successful promotions, he used less inflammatory language but expressly called Vela a monopolistic booking agent. In an undated memo sent to three men (without their last names) in the late spring of 1999, McGregor stated, "We are also

3

working to break the 'stranglehold' Oscar Vela has placed on bringing Mexican acts to Austin. His monopoly will soon be over." In a note dated August 31, 1999, also on letterhead, McGregor wrote to Esteban de Paz stating, "We especially are dissappointed [sic] that a person like Oscar Vela is able to 'control' the entertainment in this huge growing marketplace."

Witnesses testified that McGregor made similar oral statements. Freddie Quinonez, owner of a ballroom in Florence, said McGregor told him that he had sent a letter to a newspaper in Monterrey stating that Vela sold drugs; Quinonez denied that Vela had ever threatened him or told him not to advertise with McGregor's station. Though Vela did request that Quinonez not advertise his Florence shows in Austin in order to avoid diluting business for both of them, Quinonez said that when economic necessity required him to advertise in Austin, Vela said to him, "[D]o whatever you have to do." Quinonez said he chose to advertise with McGregor's more powerful station in order to reach his Florence audience and avoid direct conflict with Vela's advertisements on Garcia's station. Anthony Villanueva, a former employee of Vela and of McGregor who now works for Garcia's radio station, said McGregor told friends and employees that Vela was a drug dealer and that he was in the Mafia. Villanueva said that everybody at the Yellow Rose office knew about the August 6 letter. He denied saying that Vela told him not to advertise his shows on McGregor's stations; though he denied saying that Vela was in the actual Mafia, he did admit saying that Vela was "into sort of a music Mafia" based on his control of the booking of Monterrey-based bands in Austin. Urdiales said McGregor told Oscar Flores, a Monterrey entertainment empresario, that he should not work with Vela because Vela was a drug dealer and that Flores's bands would be at risk at Vela's events because of the drug deals, the prostitution, and the alcohol sold to minors. Urdiales said that

4

she heard McGregor confirm with his lawyer before sending the August 6 letter that he would not get in trouble if he did not mention Vela's name. She said that she heard McGregor tell his employees and clients much the same information that he wrote in the letter. She heard him tell the Drug Enforcement Agency ("DEA") that Vela was selling drugs and alcohol to minors at his dances.

All three witnesses said they warned McGregor about the inaccuracy of his statements maligning Vela. Urdiales said she told McGregor directly that she had not seen any of the illegal activities mentioned in the August 6 letter at Vela's events. She said that when his vice president, Elena Quezada, warned him to ensure that they had seen such activities before making the assertions, McGregor told her to follow his instructions. Quinones testified that he told McGregor he had never seen Vela do anything illegal. Villanueva also testified, "I told him that the fact that they were charging Oscar Vela was incorrect."

Vela sued for defamation, and the jury found in his favor. Considering the three written communications and various conversations detailed above, the jury found that McGregor's statements were both defamation and defamation per se, were not true, were made in his capacity as an officer, employee or agent of Yellow Rose, and caused Vela $125,000 in damages based on loss of reputation, mental suffering, shame, embarrassment, humiliation, and loss of business income. The jury also found by clear and convincing evidence that McGregor made the statements knowing they were false or with reckless disregard for the truth; the jury awarded $5,000 in exemplary damages.

**ANALYSIS**

Appellants present five issues on appeal. They contend that there was no evidence of defamation per se, damages, or actual malice. They also contend that the court improperly rejected

5

a jury charge and instruction on qualified privilege. McGregor contends that we should reverse the judgment against him individually because he made the statements as a corporate officer.

When reviewing appellants' no-evidence challenges, we will consider all the evidence in the light most favorable to Vela, making every reasonable inference in his favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the jury's finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding is more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *See Crye*, 907 S.W.2d at 499; *Moriel*, 879 S.W.2d at 25.

Though appellants' issues are stated as no-evidence challenges, in their argument they quote the factual sufficiency standard, indicating that they want such review. We consider all the evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In reviewing the evidence, we bear in mind that the jury is the sole judge of the credibility of witnesses and is entitled to accept or reject testimony and to decide what weight to give it. *Simons v. City of Austin*, 921 S.W.2d 524, 531 (Tex. App.—Austin 1996, writ denied).

6

Appellants' complaint that there was no evidence of defamation per se does not require reversal of the judgment. The jury's finding of defamation stands unchallenged and provides a basis for a damage award. *Texas Dep't of Human Res. v. Orr*, 730 S.W.2d 435, 436 (Tex. App.—Austin 1987, no writ); *see also Ponton v. Munro*, 818 S.W.2d 865, 867-68 (Tex. App.—Corpus Christi 1991, no writ). Further, legally and factually sufficient evidence supports the finding of defamation per se. The district court instructed the jury that "[d]efamation per se means a statement that tends to affect a person injuriously in his business, occupation, or office; or charges the person with illegal or immoral conduct." *See Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (affecting business); *Diaz v. Rankin*, 777 S.W.2d 496, 499 (Tex. App.—Corpus Christi 1989, no writ) (alleging illegality). The finding is supported by several communications.

The oral statements McGregor made to or in the presence of Quinonez, Villanueva, and Urdiales support the finding of defamation per se. All three testified that McGregor told them that Vela sold illegal drugs. Though all three witnesses have ties to Vela, and three other witnesses testified that Urdiales is known to lie, the jury was not required to discount their testimony.

Evidence supports a finding that McGregor's August 6 letter defames Vela per se. In one passage of the letter, McGregor juxtaposes Mexico's reputation for smuggling drugs through bands on buses with the statement that one booking agent controls which bands come into Austin; in another, McGregor states that this booking agent has threatened that people who interfere with his monopoly will suffer economic and physical harm. The fact that McGregor did not name Vela does not prevent the letter from defaming him. "[P]ublication does not require that the plaintiff be

7

named, if those who know the plaintiff and are acquainted with him understand that the defamatory publication referred to him." *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (Tex. 1960); *see also Galveston County Fair & Rodeo, Inc. v. Glover*, 880 S.W.2d 112, 119 (Tex. App.—Texarkana 1994, writ denied). McGregor protests that he had an amalgam of several booking agents in mind, but his undated memo speaks of Vela's monopoly and stranglehold on the Austin market, and his August 31 note states that Vela controls the marketplace. Further, Vela and others testified that Vela was the preeminent booking agent for Monterrey bands; Garcia testified that the letter could have referred only to Vela. The evidence supports a finding that Vela was the unnamed agent. McGregor's failure to say "the booking agent is selling drugs" does not prevent the letter from being defamatory. "[A]n allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). By asserting that Vela threatens violence to maintain his monopoly and implying that he uses bookings to smuggle and sell drugs, McGregor both charged Vela with illegality and attacked his business reputation. Vela testified that these statements impaired his business relationship with Flores and reduced his bookings, although he conceded that some of the slowdown in his bookings might be due to market conditions and increased competition. The evidence is legally and factually sufficient to support a finding of defamation per se.

McGregor next challenges the actual damages award. He contends that Vela failed to prove injury to reputation and loss of income. Because sufficient evidence supports the jury's finding of defamation per se through injury to Vela's reputation in business and his reputation as law-

abiding, Vela can recover general damages without proof of other injury. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984); *Knox v. Taylor*, 992 S.W.2d 40, 60 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We also note that Vela testified about a reduction in business, impairment of business relationships, and the stress and anxiety produced by McGregor's affronts to his business reputation and allegations to law enforcement agencies of illegal activities. Though some evidence supports the view that Vela's business losses were due to market conditions and not to damage to his reputation, we conclude that the record contains legally and factually sufficient evidence to support the jury's award of $125,000 in actual damages.

McGregor does not contest the jury's finding that the defamatory statements were false, but challenges the finding that he made the statements knowing that they were false or with reckless disregard for the truth. *See Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000). McGregor said he learned of drug and alcohol problems in local clubs from the DEA and the Texas Alcoholic Beverage Commission, and that he also learned of problems through the media. Urdiales, however, testified that she heard McGregor report *to* the DEA that Vela was dealing drugs. Several people testified that they had neither seen nor smelled drugs being used at Vela's dances or concerts. Quinonez, Villanueva, and Urdiales all testified that they warned McGregor at various times that his assertions about Vela's drug dealing and strong-arm tactics were not true. Urdiales testified that when Quezada asked McGregor if he was sure that they had seen the activities alleged because false allegations could be troublesome, McGregor responded, "You just do it. I tell you to do it, and you just do it." McGregor continued to make the assertions about Vela despite these warnings. Though McGregor attacked these witnesses' credibility, the jury was free

to believe them. The evidence is legally and factually sufficient to support the jury's finding that he made these allegations about Vela with at least reckless disregard for their truth.

The evidentiary support for the finding of actual malice renders harmless any error in the court's refusal to submit an instruction and charge on qualified privilege. McGregor contends that he was entitled to the instruction and charge because there was evidence that his letters and statements regarding Vela were made in good faith on a subject matter in which he had a common interest with the recipient or with reference to which he had a duty to communicate to the recipient. *See Grant v. Stop-n-Go Mkt. of Texas, Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The qualified privilege "justifies the communication when it is made *without actual malice*." *Id.* (emphasis added). Because the jury found that the communication was made *with* actual malice, McGregor's claim of qualified privilege would have failed even if the jury had found that the privilege applied. Error in the submission of an issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment. *See Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex.1980).

Finally, McGregor contends that he is insulated from personal liability for statements made in the scope of performing his duties for the corporation. The corporate structure does not shield McGregor from all tort liability, however. Corporate agents who knowingly direct or participate in a tortious act may be held individually liable without piercing the corporate veil. *Barclay v. Johnson*, 686 S.W.2d 334, 336 (Tex. App.—Houston [1st Dist.] 1985, no writ); *see also Leyendecker*, 683 S.W.2d at 375. There is ample evidence that McGregor, acting as Yellow Rose's

10

president, personally directed and committed the defamation of Vela. The district court did not err by assessing the damage award against McGregor individually.

## CONCLUSION

Having resolved all issues in favor of the judgment, we affirm the district court's judgment based on the jury's verdict.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:  February 14, 2002

Do Not Publish

11