TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-

01-00299-CV







Andrew T. McGregor and Yellow Rose Communications, Inc., Appellants



v.



Oscar Vela, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 99-12077 HONORABLE PAUL DAVIS, JUDGE PRESIDING







 A jury found that Andrew T. McGregor, president and part owner of Yellow Rose
Communications, Inc., defamed Oscar Vela. The jury found that McGregor made false, defamatory
statements with actual malice in his official capacity with Yellow Rose. The jury found actual
damages of $125,000 and punitive damages of $5,000. The district court awarded judgment
accordingly, assessing damages against both McGregor and Yellow Rose. Appellants McGregor and
Yellow Rose jointly contend that they were wrongly denied a jury instruction and charge on qualified
privilege. They also contend that there was no evidence to support the findings of defamation per
se, actual malice, and damages. McGregor argues that the finding that he made the statements in his
official capacity should absolve him of individual liability. We will affirm the judgment.


BACKGROUND


 Yellow Rose is a Texas corporation owned by McGregor, his wife, and son.
McGregor is the president. Yellow Rose owns two Central Texas radio stations that play Spanish-language music. Oscar Vela is well-known as the dominant promoter of Spanish-language dances
and concerts in Austin--particularly those involving bands from Monterrey, Mexico. However, in
1999, McGregor was attempting to challenge Vela's dominance in the promotion of such dances and
concerts. Pati Urdiales was a Yellow Rose employee who worked as a salesperson, a disc jockey,
and a booking agent, who also wanted to become a promoter in her own right; two months after
McGregor fired her in September 1999, she went to work for a rival radio station owned by Jose
Garcia. Vela advertises his events on Garcia's radio stations.

 McGregor signed a letter dated August 6, 1999 on radio-station letterhead (1) discussing
the state of Spanish-language music promotion in Austin. He noted that before his stations arrived, 


 Austin was monopolized by one radio station operator and one booking agent. The
monopoly seemed to be disliked by the community. Clubs were and are still selling
alcohol to underage teens....narcotics still flow freely through the Clubs and
Concerts.


 The business of providing Hispanic entertainment to this Central Texas area is under
a cloud that is not wholesome and motivated by monopolistic greed.


 Now there is another radio voice playing artists['] records, NOT accepting Payola
and helping out of town booking companies have the advertising needed to establish
new CLUBS and SHOWS.


 Word is spreading that the 'Mafia-Like' dividing of the Texas cities may be coming
to an end. However it still persists.


 Mexico's reputation, true or not, is one of sending Bands here with narcotics on
board the buses and into the Clubs. One booking agent still brags that he 'controls'
Austin Mexican bookings and no one else can come into this city.


 He threatens to pit one band and one venue against another to dilute profits. He has
threatened that 'people will get hurt' if they interfere with his monopoly.


The letter goes on to reiterate some of these allegations and then position McGregor's nascent
Superior Booking Agency and radio stations as an alternative to the status quo. McGregor testified
that, despite his statement that one booking agent had a monopoly on Austin, he did not have a
particular booking agent in mind but an amalgam of several agents. Urdiales said she heard
McGregor confirm with his lawyer, "So if I say all what he does but don't mention his name, I won't
get in trouble?" Urdiales did not specify in her testimony what the subject of McGregor's
confirmation was. Garcia, Urdiales's current employer and owner of rival radio stations on which
Vela advertises, testified that the letter could only refer to Vela.

 McGregor gave the letter to Urdiales to give to her cousin, a music journalist in
Monterrey. She testified that she was directed to deliver it to the United States embassy, which she
did, and to other people in the music business, which she did not do after her cousin told her about
the letter's contents. McGregor testified that he prepared the letter at Urdiales's request that he
provide her cousin an overview of the Austin music scene; Urdiales denied McGregor's assertion
that she or her cousin requested it.

 In other notes McGregor sent following up on successful promotions, he used less
inflammatory language but expressly called Vela a monopolistic booking agent. In an undated
memo sent to three men (without their last names) in the late spring of 1999, McGregor stated, "We
are also working to break the 'stranglehold' Oscar Vela has placed on bringing Mexican acts to
Austin. His monopoly will soon be over." In a note dated August 31, 1999, also on letterhead,
McGregor wrote to Esteban de Paz stating, "We especially are dissappointed [sic] that a person like
Oscar Vela is able to 'control' the entertainment in this huge growing marketplace." 

 Witnesses testified that McGregor made similar oral statements. Freddie Quinonez,
owner of a ballroom in Florence, said McGregor told him that he had sent a letter to a newspaper in
Monterrey stating that Vela sold drugs; Quinonez denied that Vela had ever threatened him or told
him not to advertise with McGregor's station. Though Vela did request that Quinonez not advertise
his Florence shows in Austin in order to avoid diluting business for both of them, Quinonez said that
when economic necessity required him to advertise in Austin, Vela said to him, "[D]o whatever you
have to do." Quinonez said he chose to advertise with McGregor's more powerful station in order
to reach his Florence audience and avoid direct conflict with Vela's advertisements on Garcia's
station. Anthony Villanueva, a former employee of Vela and of McGregor who now works for
Garcia's radio station, said McGregor told friends and employees that Vela was a drug dealer and
that he was in the Mafia. Villanueva said that everybody at the Yellow Rose office knew about the
August 6 letter. He denied saying that Vela told him not to advertise his shows on McGregor's
stations; though he denied saying that Vela was in the actual Mafia, he did admit saying that Vela
was "into sort of a music Mafia" based on his control of the booking of Monterrey-based bands in
Austin. Urdiales said McGregor told Oscar Flores, a Monterrey entertainment empresario, that he
should not work with Vela because Vela was a drug dealer and that Flores's bands would be at risk
at Vela's events because of the drug deals, the prostitution, and the alcohol sold to minors. Urdiales
said that she heard McGregor confirm with his lawyer before sending the August 6 letter that he
would not get in trouble if he did not mention Vela's name. She said that she heard McGregor tell
his employees and clients much the same information that he wrote in the letter. She heard him tell
the Drug Enforcement Agency ("DEA") that Vela was selling drugs and alcohol to minors at his
dances.

 All three witnesses said they warned McGregor about the inaccuracy of his statements
maligning Vela. Urdiales said she told McGregor directly that she had not seen any of the illegal
activities mentioned in the August 6 letter at Vela's events. She said that when his vice president,
Elena Quezada, warned him to ensure that they had seen such activities before making the assertions,
McGregor told her to follow his instructions. Quinones testified that he told McGregor he had never
seen Vela do anything illegal. Villanueva also testified, "I told him that the fact that they were
charging Oscar Vela was incorrect." 

 Vela sued for defamation, and the jury found in his favor. Considering the three
written communications and various conversations detailed above, the jury found that McGregor's
statements were both defamation and defamation per se, were not true, were made in his capacity
as an officer, employee or agent of Yellow Rose, and caused Vela $125,000 in damages based on
loss of reputation, mental suffering, shame, embarrassment, humiliation, and loss of business
income. The jury also found by clear and convincing evidence that McGregor made the statements
knowing they were false or with reckless disregard for the truth; the jury awarded $5,000 in
exemplary damages.

ANALYSIS


 Appellants present five issues on appeal. They contend that there was no evidence
of defamation per se, damages, or actual malice. They also contend that the court improperly
rejected a jury charge and instruction on qualified privilege. McGregor contends that we should
reverse the judgment against him individually because he made the statements as a corporate officer. 

 When reviewing appellants' no-evidence challenges, we will consider all the evidence
in the light most favorable to Vela, making every reasonable inference in his favor. See Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998); Transportation Ins.
Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671
(Tex. 1990). We will uphold the jury's finding if more than a scintilla of evidence supports it. 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Seideneck v. Cal Bayreuther
Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). 
The evidence supporting a finding is more than a scintilla if reasonable minds could arrive at the
finding given the facts proved in the particular case. See Crye, 907 S.W.2d at 499; Moriel, 879
S.W.2d at 25.

 Though appellants' issues are stated as no-evidence challenges, in their argument they
quote the factual sufficiency standard, indicating that they want such review. We consider all the
evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support
the finding, or (2) the finding is so against the overwhelming weight of the evidence as to be
manifestly unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). In reviewing the evidence, we bear in mind that the jury is the sole judge of the
credibility of witnesses and is entitled to accept or reject testimony and to decide what weight to give
it. Simons v. City of Austin, 921 S.W.2d 524, 531 (Tex. App.--Austin 1996, writ denied).

 Appellants' complaint that there was no evidence of defamation per se does not
require reversal of the judgment. The jury's finding of defamation stands unchallenged and provides
a basis for a damage award. Texas Dep't of Human Res. v. Orr, 730 S.W.2d 435, 436 (Tex.
App.--Austin 1987, no writ); see also Ponton v. Munro, 818 S.W.2d 865, 867-68 (Tex.
App.--Corpus Christi 1991, no writ). Further, legally and factually sufficient evidence supports the
finding of defamation per se. The district court instructed the jury that "[d]efamation per se means
a statement that tends to affect a person injuriously in his business, occupation, or office; or charges
the person with illegal or immoral conduct." See Bradbury v. Scott, 788 S.W.2d 31, 38 (Tex.
App.--Houston [1st Dist.] 1989, writ denied) (affecting business); Diaz v. Rankin, 777 S.W.2d 496,
499 (Tex. App.--Corpus Christi 1989, no writ) (alleging illegality). The finding is supported by
several communications. 

 The oral statements McGregor made to or in the presence of Quinonez, Villanueva,
and Urdiales support the finding of defamation per se. All three testified that McGregor told them
that Vela sold illegal drugs. Though all three witnesses have ties to Vela, and three other witnesses
testified that Urdiales is known to lie, the jury was not required to discount their testimony. 

 Evidence supports a finding that McGregor's August 6 letter defames Vela per se. 
In one passage of the letter, McGregor juxtaposes Mexico's reputation for smuggling drugs through
bands on buses with the statement that one booking agent controls which bands come into Austin;
in another, McGregor states that this booking agent has threatened that people who interfere with
his monopoly will suffer economic and physical harm. The fact that McGregor did not name Vela
does not prevent the letter from defaming him. "[P]ublication does not require that the plaintiff be
named, if those who know the plaintiff and are acquainted with him understand that the defamatory
publication referred to him." Newspapers, Inc. v. Matthews, 339 S.W.2d 890, 894 (Tex. 1960); see
also Galveston County Fair & Rodeo, Inc. v. Glover, 880 S.W.2d 112, 119 (Tex. App.--Texarkana
1994, writ denied). McGregor protests that he had an amalgam of several booking agents in mind,
but his undated memo speaks of Vela's monopoly and stranglehold on the Austin market, and his
August 31 note states that Vela controls the marketplace. Further, Vela and others testified that Vela
was the preeminent booking agent for Monterrey bands; Garcia testified that the letter could have
referred only to Vela. The evidence supports a finding that Vela was the unnamed agent. 
McGregor's failure to say "the booking agent is selling drugs" does not prevent the letter from being
defamatory. "[A]n allegedly defamatory publication should be construed as a whole in light of the
surrounding circumstances based upon how a person of ordinary intelligence would perceive it." 
Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000). By asserting that Vela threatens
violence to maintain his monopoly and implying that he uses bookings to smuggle and sell drugs,
McGregor both charged Vela with illegality and attacked his business reputation. Vela testified that
these statements impaired his business relationship with Flores and reduced his bookings, although
he conceded that some of the slowdown in his bookings might be due to market conditions and
increased competition. The evidence is legally and factually sufficient to support a finding of
defamation per se.

 McGregor next challenges the actual damages award. He contends that Vela failed
to prove injury to reputation and loss of income. Because sufficient evidence supports the jury's
finding of defamation per se through injury to Vela's reputation in business and his reputation as
law-abiding, Vela can recover general damages without proof of other injury. See Leyendecker &
Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex.1984); Knox v. Taylor, 992 S.W.2d 40, 60 (Tex.
App.--Houston [14th Dist.] 1999, no pet.). We also note that Vela testified about a reduction in
business, impairment of business relationships, and the stress and anxiety produced by McGregor's
affronts to his business reputation and allegations to law enforcement agencies of illegal activities. 
Though some evidence supports the view that Vela's business losses were due to market conditions
and not to damage to his reputation, we conclude that the record contains legally and factually
sufficient evidence to support the jury's award of $125,000 in actual damages.

 McGregor does not contest the jury's finding that the defamatory statements were
false, but challenges the finding that he made the statements knowing that they were false or with
reckless disregard for the truth. See Huckabee v. Time Warner Entm't Co., 19 S.W.3d 413, 420
(Tex. 2000). McGregor said he learned of drug and alcohol problems in local clubs from the DEA
and the Texas Alcoholic Beverage Commission, and that he also learned of problems through the
media. Urdiales, however, testified that she heard McGregor report to the DEA that Vela was
dealing drugs. Several people testified that they had neither seen nor smelled drugs being used at
Vela's dances or concerts. Quinonez, Villanueva, and Urdiales all testified that they warned
McGregor at various times that his assertions about Vela's drug dealing and strong-arm tactics were
not true. Urdiales testified that when Quezada asked McGregor if he was sure that they had seen the
activities alleged because false allegations could be troublesome, McGregor responded, "You just
do it. I tell you to do it, and you just do it." McGregor continued to make the assertions about Vela
despite these warnings. Though McGregor attacked these witnesses' credibility, the jury was free
to believe them. The evidence is legally and factually sufficient to support the jury's finding that he
made these allegations about Vela with at least reckless disregard for their truth.

 The evidentiary support for the finding of actual malice renders harmless any error
in the court's refusal to submit an instruction and charge on qualified privilege. McGregor contends
that he was entitled to the instruction and charge because there was evidence that his letters and
statements regarding Vela were made in good faith on a subject matter in which he had a common
interest with the recipient or with reference to which he had a duty to communicate to the recipient. 
See Grant v. Stop-n-Go Mkt. of Texas, Inc., 994 S.W.2d 867, 874 (Tex. App.--Houston [1st Dist.]
1999, no pet.). The qualified privilege "justifies the communication when it is made without actual
malice." Id. (emphasis added). Because the jury found that the communication was made with
actual malice, McGregor's claim of qualified privilege would have failed even if the jury had found
that the privilege applied. Error in the submission of an issue is harmless when the findings of the
jury in answer to other issues are sufficient to support the judgment. See Boatland of Houston, Inc.
v. Bailey, 609 S.W.2d 743, 750 (Tex.1980).

 Finally, McGregor contends that he is insulated from personal liability for statements
made in the scope of performing his duties for the corporation. The corporate structure does not
shield McGregor from all tort liability, however. Corporate agents who knowingly direct or
participate in a tortious act may be held individually liable without piercing the corporate veil. 
Barclay v. Johnson, 686 S.W.2d 334, 336 (Tex. App.--Houston [1st Dist.] 1985, no writ); see also
Leyendecker, 683 S.W.2d at 375. There is ample evidence that McGregor, acting as Yellow Rose's
president, personally directed and committed the defamation of Vela. The district court did not err
by assessing the damage award against McGregor individually.


CONCLUSION


 Having resolved all issues in favor of the judgment, we affirm the district court's
judgment based on the jury's verdict.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 14, 2002

Do Not Publish

1. McGregor testified that this was not embossed letterhead paper, but merely paper with the
logos on it. We will call it letterhead for simplicity.